**In re the Matter of STATE OF GEORGIA, ex rel., Mary A. BROOKS, Petitioner, Appellant,**

v.

**Kenneth BRASWELL, Respondent.**

No. C4–90–570.

Supreme Court of Minnesota.

Sept. 6, 1991.

Tom Foley, Ramsey County Atty., Brad A. Johnson, Asst. Ramsey County Atty., St. Paul, for appellant.

Nancy L. Ponto, St. Paul, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Jocelyn F. Olson, Asst. Atty. Gen., St. Paul, amicus curiae for State of Minn.

COYNE, Justice.

On the petition of the State of Georgia ex rel. Mary A. Brooks, the initiating state in this proceeding pursuant to the Revised Uniform Reciprocal Enforcement of Support Act (RURESA), Minn.Stat. §§ 518C.01–518C.36 (1990), we review a decision of the court of appeals reversing the district court's denial of respondent Kenneth Braswell's motions to vacate child support orders and to compel the parties and the child to undergo blood tests. The district court had declared a provision of the Parentage Act, Minn.Stat. § 257.57, subd. 1(b), as amended by 1989 Minn.Laws, ch. 282, art. 2, § 162, violative of article XII, section 1 of the Minnesota Constitution, prohibiting special legislation, and of the equal protection clause of the fourteenth amendment to the United States Constitution. Concluding that the statute, as amended in 1989, was constitutional, the court of appeals ruled that Braswell was entitled to seek a declaration of the nonexistence of the father and child relationship. *State of Georgia ex rel. Brooks v. Braswell,* 460 N.W.2d 344 (Minn.App.1990). We reverse on other grounds without reaching the constitutional issues.

Kenneth Braswell and Mary Brooks were married on October 17, 1975, in Albany, Georgia. In April of 1977, they moved to Garland, Texas, but a short time later Brooks returned alone to Georgia. On December 12, 1977, Brooks gave birth to a son. The following autumn, on October 3, 1978, a Georgia court issued a judgment and decree of divorce, awarding Brooks permanent custody of "the parties' minor child", but reserving child support because Braswell had been served by publication.

On June 2, 1987 the State of Georgia initiated a RURESA proceeding in Ramsey County naming Braswell, who was by then a Minnesota resident, as obligor. Braswell's response to an order to show cause was a motion for an order denying the petition and directing the parties and the child to submit to blood tests. Apparently equating Braswell's response with the statutory "action", the district court ruled that the action for the purpose of declaring the nonexistence of the father and child relationship pursuant to Minn.Stat. § 257.57, subd. 1(b) (1986), was time-barred: more than three years had elapsed since the birth of the child, who was then almost 10 years old, and, in addition, Braswell had conceded that Brooks had told him six years earlier, in 1981, that he had a son. Having found that, pursuant to Minn.Stat. § 257.55, subd. 1(a) (1986), Braswell "is presumed to be the natural father" of the child and "owes a duty of support," the district court ordered him to pay child support.[1]

Apparently, Braswell paid child support as ordered for nearly two years, until May of 1989. Then, on September 12, 1989, Braswell noticed a motion for an order (1) vacating the order of August 28, 1987 and two amended child support orders, (2) directing the parties and the child to submit to blood tests, and (3) reserving the issue of child support pending the outcome of the blood tests. By affidavits accompanying this and his earlier motion, Braswell averred that for a period of several months immediately preceding their separation, he was not faithful to his wife and he did not expect her to be faithful to him.

Braswell's attempt to vacate the 1987 and 1988 orders appears to have prompted recognition of their lack of finality, for on November 13, 1989 notice of the making and filing of all four orders was served by mail.

By order issued December 4, 1989 on the recommendation of the family court referee, the district court denied Braswell's motion to vacate the orders of 1987 and 1988. At the same time, however, the court concluded that Braswell had a right pursuant to Minn.Stat. § 257.57, subd. 1(b), as amended in 1989[2] to "pursue an action"

---

**1.** The order dated August 28, 1987 and filed September 2, 1987, was issued by the court on the recommendation of a family court referee and affirmed on December 4, 1987 after independent review by a judge of the district court pursuant to Minn.Stat. § 484.70, subd. 7(c) and (d) (1986). Subsequently, on February 1, 1988 and April 25, 1988, the court issued orders amending the terms of child support.

**2.** In 1989 Minn.Stat. § 257.57, subd. 1 (1988) was amended in the following manner:

Subdivision 1. A child, the child's biological mother, or a man presumed to be the child's father under section 257.55, subdivision 1, clause (a), (b), or (c) may bring an action:

(a) At any time for the purpose of declaring the existence of the father and child relationship presumed under section 257.55, subdivision 1, clause (a), (b), or (c); or

(b) Within three years after the child's birth for the purpose of declaring the nonexistence of the father and child relationship presumed

under section 257.55, subdivision 1, clause (a), (b), or (c) ~~only if the action is brought within a reasonable time after the person bringing the action has obtained knowledge of relevant facts, but in no event later than three years after the child's birth.~~ However, if the presumed father was divorced from the child's mother after service by publication, and, if, on or before the 280th day after the judgment and decree of divorce or dissolution became final, he did not know that the child was born during the marriage or within 280 days after the marriage was terminated, the action is not barred until one year after the child reaches the age of majority. After the presumption has been rebutted, paternity of the child by another man may be determined in the same action, if he has been made a party.

1989 Minn.Laws ch. 282, art. 2, § 162. The amendment was expressly made applicable to actions commenced after January 1, 1986. 1989 Minn.Laws ch. 282, art. 2, § 220, subd. 6.

to determine the nonexistence of a father and child relationship, ordered the parties and the child to submit to blood tests, and amended the support orders to direct that future support payments be held in escrow pending the outcome of the blood tests and further order of the court. On review of objections pursuant to Minn.Stat. § 484.70, subd. 7(d) (1988), the district court then declared Minn.Stat. § 257.57, subd. 1(b), as amended by 1989 Minn.Laws, ch. 282, art. 2, § 162, violative of article XII, section 1 of the Minnesota Constitution, prohibiting special legislation, and of the equal protection clause of the fourteenth amendment of the United States Constitution. Having so concluded, the trial court applied the 1988 version of the statute to declare that the limitation period of section 257.57, subd. 1(b) for instituting an action for the declaration of the nonexistence of the father-child relationship had expired. On February 7, 1990 the district court denied Braswell's motion in its entirety without addressing Brooks' contention that the fact of paternity was by then res judicata.[3]

On appeal, the court of appeals reversed on the sole ground that Minn.Stat. § 257.-57, subd. 1(b) (Supp.1989), violated neither the prohibition against special legislation nor the equal protection clause and ruled that Braswell was entitled to seek a declaration of nonpaternity, remanding to the trial court for further proceedings. *State of Georgia ex rel. Brooks v. Braswell*, 460 N.W.2d 344, 347–49 (Minn.App.1990).[4]

▮ At the outset we note that the disposition of this matter has been complicated by the failure of the parties and of both lower courts to distinguish between an action for the purpose of declaring the nonexistence of the father and child relationship pursuant to section 257.57, subd. 1(b) and the denial of paternity asserted to rebut the presumption of paternity created by Minn.Stat. § 257.55, subd. 1(a) (1990), despite our identification and discussion of the differences between offensive and defensive application of a denial of paternity in *State ex rel. Ward v. Carlson*, 409 N.W.2d 490 (Minn.1987). The actions authorized by section 257.57, including the

**3.** Although the issue has not been raised here or at the court of appeals, we note that an order refusing to vacate an appealable order or a judgment entered in conformity with the verdict or order for judgment is not appealable. *Bennett v. Johnson*, 230 Minn. 404, 42 N.W.2d 44 (1950); *Trickel v. Calvin*, 230 Minn. 322, 41 N.W.2d 426 (1950); *Breslaw v. Breslaw*, 229 Minn. 371, 39 N.W.2d 499 (1949); *LaFond v. Sczepanski*, 273 Minn. 293, 141 N.W.2d 485 (1966); *LeRoy v. Figure Skating Club of Minneapolis*, 281 Minn. 576, 162 N.W.2d 248 (1968); *Kottkes' Bus Co. v. Hippie*, 286 Minn. 526, 176 N.W.2d 752 (1970). *See also Lyon Development Corp. v. Ricke's, Inc.*, 296 Minn. 75, 207 N.W.2d 273 (1973) (order denying Rule 60.02 motion to vacate judgment nonappealable).

**4.** Prior to the submission of the case to the court of appeals, the legislature once more amended Minn.Stat. § 257.57, subd. 1(b) as follows:

Subdivision 1. A child, the child's biological mother, or a man presumed to be the child's father under section 257.55, subdivision 1, clause (a), (b), or (c) may bring an action:

(a) At any time for the purpose of declaring the existence of the father and child relationship presumed under section 257.55, subdivision 1, clause (a), (b), or (c); or

(b) Within three years after the child's birth for the purpose of declaring the nonexistence of the father and child relationship presumed

under section 257.55, subdivision 1, clause (a), (b), or (c). However, if the presumed father was divorced from the child's mother after service by publication; and, if, on or before the 280th day after the judgment and decree of divorce or dissolution became final, he did not know that the child was born during the marriage or within 280 days after the marriage was terminated, the action is not barred until one year after the child reaches the age of majority or one year after the presumed father knows or reasonably should have known of the birth of the child, whichever is earlier. After the presumption has been rebutted, paternity of the child by another man may be determined in the same action, if he has been made a party.

1990 Minn.Laws ch. 568, art. 2, § 104, subd. 4. By its terms this 1990 amendment, like the 1989 amendment, was expressly made applicable (with an exception which is not germane here) to actions brought after January 1, 1986. 1990 Minn.Laws ch. 568, art. 2, § 65. For no stated or apparent reason the court of appeals declined to consider or apply the 1990 amendment although it is clear, in the light of Braswell's admission that he knew of the birth of the child in 1981, that on remand to the trial court further proceedings pursuant to section 257.57, subd. 1(b) would have been time-barred by the 1990 amendment.

action for the purpose of declaring the non-existence of the father and child relationship, are subject to the time limitations prescribed therein. We recognize that the Parentage Act is cast in terms which do not parallel those descriptive of other civil proceedings and that, as a result, there may be confusion in identifying appropriate avenues of relief; nevertheless, actions thereunder are governed by the rules of civil procedure, Minn.Stat. § 257.65 (1990), so that as long as an action for the purpose of declaring the nonexistence of the father and child relationship is not time-barred, it is not improper to treat a denial of paternity as the assertion of a section 257.57, subd. 1(b) action in the nature of a counterclaim. On the other hand, the right to deny paternity defensively, whether asserted to rebut a presumption of paternity or simply to defend against an allegation of paternity where there is no presumed father, is not subject to time limitations and may be exercised by the defendant in any action in which it is alleged that he is the child's father. *Carlson,* 409 N.W.2d at 493; *Reynolds v. Reynolds,* 458 N.W.2d 103, 104 (Minn.1990).

Here the presumed father has never commenced an action pursuant to section 257.57, subd. 1(b) "for the purpose of declaring the nonexistence of the father and child relationship presumed under section 257.55, subdivision 1, clause (a)." Neither has he pleaded such an action in the form of a counterclaim. Indeed, Braswell has never actually denied paternity. Rather, he moved for denial of the petitioner's requested relief and for an order compelling blood tests on the theory that because he was unfaithful to his wife at the time the child was conceived, he did not expect her to be faithful to him. If, under the circumstances, the district court erred in its 1987 determination that Braswell was presumed to be the father of the child and that he was obliged to support that child, Braswell's remedy was an appeal from that order.

Although the right to appeal remained open until December 16, 1989 because of Brooks' tardiness in serving notice of making and filing the August 28, 1987 order,

Braswell did not appeal but opted instead to move for vacation of the order determining that pursuant to Minn.Stat. § 257.55, subd. 1(a), he is presumed to be the natural father of the child born during his marriage to Brooks. At the time it was made the motion was a viable option: had the court vacated the 1987 order, Braswell could have initiated an action for a declaration of the nonexistence of the father and child relationship pursuant to the 1989 amendment of section 257.57, subd. 1(b). But despite that part of the order directing the parties and the child to undergo blood tests, the order of December 4, 1989 expressly denied Braswell's motion to vacate the order of August 28, 1987.

■■■■ Once the motion to vacate was denied, Braswell's only remaining option for further challenging the imposed child support obligation was by appeal from the 1987 order determining paternity. However, no appeal was taken and on December 16, 1989, the 1987 order determining paternity became final—i.e., the presumption created by Minn.Stat. § 257.55, subd. 1(a) (1988) was no longer subject to rebuttal. Therefore, although an action for a declaration of the nonexistence of the father and child relationship was not at that time barred by the time limits prescribed by section 257.57, subd. 1(b), as amended in 1989, it was precluded by principles of res judicata; legislative action does not retroact on past controversies resolved by final judgment or order. *In re Petition of Siblerud,* 148 Minn. 347, 351–52, 182 N.W. 168, 169–70 (1921). Accordingly, the order of February 7, 1990 properly denied Braswell's motion in all respects, albeit for the wrong reason since it was not then, nor is it now, necessary to address the constitutionality of the 1989 amendment to Minn. Stat. § 257.57, subd. 1(b).

Reversed.

GARDEBRING, J., took no part in the consideration or decision of this case.